1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

KAREN M. MCHAFFIE,

NO.  C11-5924-RSL-JPD

9

                Plaintiff,

10

v.

REPORT AND
RECOMMENDATION

11

MICHAEL J. ASTRUE, Commissioner of
Social Security,

12

13

                Defendant.

14

      Plaintiff Karen M. McHaffie appeals the final decision of the Commissioner of the

15

Social Security Administration ("Commissioner") which denied her applications for Disability

16

Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI

17

of the Social Security Act, 42 U.S.C. §§ 401-33 and 1381-83f, after a hearing before an

18

administrative law judge ("ALJ").  For the reasons set forth below, the Court recommends that

19

the Commissioner's decision be reversed and remanded.

20

I.       FACTS AND PROCEDURAL HISTORY

21

      At the time of the administrative hearing, Plaintiff was a 28-year-old woman with a

22

high school education.  Administrative Record ("AR") at 423.  Her past work experience

23

includes employment as a assistant baker, grocery store bagger, nursing home caregiver, deli

24

cashier, daycare work, and retail worker.  AR at 213.  Plaintiff was last gainfully employed in June 2006.  AR at 212.

On February 22, 2008, Plaintiff protectively filed a claim for SSI and an application for DIB, alleging an onset date[1] of December 4, 2005.  AR at 35, 178-188.  Plaintiff asserts that she is disabled due to neck and back pain, headaches, and depression.  AR at 97.

The Commissioner denied Plaintiff's claim initially and on reconsideration.  AR at 91-100.  Plaintiff requested a hearing which took place on June 30, 2010.  AR at 45.  On October 18, 2010, the ALJ issued a decision finding Plaintiff not disabled and denied benefits based on her finding that Plaintiff could perform a specific job existing in significant numbers in the national economy.  AR at 16-26.   Plaintiff's administrative appeal of the ALJ's decision was denied by the Appeals Council, AR at 1-5, making the ALJ's ruling the "final decision" of the Commissioner as that term is defined by 42 U.S.C. § 405(g).  On November 10, 2011, Plaintiff timely filed the present action challenging the Commissioner's decision.  Dkt. No. 1, 3.

## II.    JURISDICTION

Jurisdiction to review the Commissioner's decision exists pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## III.    STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

---

[1] At the administrative hearing, Plaintiff amended her alleged onset date to June 24, 2006.  AR at 47.

REPORT AND RECOMMENDATION - 2

*Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  *Id.*

The Court may direct an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose."  *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)).  The Court may find that this occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77; *see also Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000) (noting that erroneously rejected evidence may be credited when all three elements are met).

## IV.   EVALUATING DISABILITY

As the claimant, Ms. McHaffie bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal citations omitted).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant is disabled under the Act only if her impairments

REPORT AND RECOMMENDATION - 3

are of such severity that she is unable to do her previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

The Commissioner has established a five step sequential evaluation process for determining whether a claimant is disabled within the meaning of the Act.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The claimant bears the burden of proof during steps one through four.  At step five, the burden shifts to the Commissioner.  *Id.*  If a claimant is found to be disabled at any step in the sequence, the inquiry ends without the need to consider subsequent steps.  Step one asks whether the claimant is presently engaged in "substantial gainful activity."  20 C.F.R. §§ 404.1520(b), 416.920(b).[2]  If she is, disability benefits are denied.  If she is not, the Commissioner proceeds to step two.  At step two, the claimant must establish that she has one or more medically severe impairments, or combination of impairments, that limit her physical or mental ability to do basic work activities.  If the claimant does not have such impairments, she is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant does have a severe impairment, the Commissioner moves to step three to determine whether the impairment meets or equals any of the listed impairments described in the regulations.  20 C.F.R. §§ 404.1520(d), 416.920(d).  A claimant whose impairment meets or equals one of the listings for the required twelve-month duration requirement is disabled.  *Id.*

When the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner must proceed to step four and evaluate the claimant's

---

[2] Substantial gainful activity is work activity that is both substantial, i.e., involves significant physical and/or mental activities, and gainful, i.e., performed for profit.  20 C.F.R. § 404.1572.

REPORT AND RECOMMENDATION - 4

residual functional capacity ("RFC").  20 C.F.R. §§ 404.1520(e), 416.920(e).  Here, the

Commissioner evaluates the physical and mental demands of the claimant's past relevant work

to determine whether she can still perform that work.  20 C.F.R. §§ 404.1520(f), 416.920(f).  If

the claimant is able to perform her past relevant work, she is not disabled; if the opposite is

true, then the burden shifts to the Commissioner at step five to show that the claimant can

perform other work that exists in significant numbers in the national economy, taking into

consideration the claimant's RFC, age, education, and work experience.  20 C.F.R. §§

404.1520(g), 416.920(g); *Tackett*, 180 F.3d at 1099, 1100.  If the Commissioner finds the

claimant is unable to perform other work, then the claimant is found disabled and benefits may

be awarded.

V.      DECISION BELOW

On October 18, 2010, the ALJ issued a decision finding the following:

1.    The claimant meets the insured status requirements of the Social
      Security Act through December 31, 2010.

2.    The claimant has not engaged in substantial gainful activity since
      December 4, 2005, the alleged onset date.

3.    The claimant has the following severe impairments: cervical and
      lumbar strain, headaches, and major depressive disorder.

4.    The claimant does not have an impairment or combination of
      impairments that meets or medically equals one of the listed
      impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5.    After careful consideration of the entire record, the undersigned finds
      that the claimant has the residual functional capacity to lift and/or
      carry up to 20 pounds occasionally and 10 pounds frequently, stand
      and/or walk up to six hours in an eight-hour workday, and sit up to six
      hours in an eight-hour workday.  The claimant is limited to occasional
      climbing of ramps, stairs, and ladders, stooping, kneeling, crouching,
      and crawling.  The claimant is able to perform and persist at simple,
      repetitive tasks, and interact appropriately with supervisors, and co-
      workers, though she would work best in a job without constant contact
      with the general public.

REPORT AND RECOMMENDATION - 5

6.     The claimant is unable to perform any past relevant work.

7.     The claimant was born on XXXXX, 1981 and was 24 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.[3]

8.     The claimant has at least a high school education and is able to communicate in English.

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.    The claimant has not been under a disability, as defined in the Social Security Act, from December 4, 2005, through the date of this decision.

AR at 18-26.

VI.     ISSUES ON APPEAL

The principal issues on appeal are:

1.     Whether the ALJ properly evaluated the medical evidence;

2.     Whether the ALJ erred in discounting Plaintiff's credibility;

3.     Whether the ALJ erred in discounting the lay evidence; and

4.     Whether the ALJ considered all of Plaintiff's limitations when evaluating her residual functional capacity.

Dkt. No. 12 at 1.

VII.     DISCUSSION

A.     The ALJ Erred in Evaluating the Medical Evidence.

According to Plaintiff, the ALJ erred by not specifically mentioning the medical

opinions of treating Group Health Physicians providers, and by rejecting the opinion of Drs.

---

[3]  The actual date is deleted in accordance with Local Rule CR 5.2, W.D. Washington.

REPORT AND RECOMMENDATION - 6

1   Peterson and Hunt as inconsistent with the medical evidence of record.  Lastly, Plaintiff argues

2   that the ALJ misconstrued the opinions of Dr. West, and did not incorporate all of his opinions

3   into the RFC assessment.

4       1.   <u>Legal Standards for Assessing Medical Evidence.</u>

5       As a matter of law, more weight is given to a treating physician's opinion than to that

6   of a non-treating physician because a treating physician "is employed to cure and has a greater

7   opportunity to know and observe the patient as an individual."  *Magallanes v. Bowen*, 881 F.2d

8   747, 751 (9th Cir. 1989); *see also Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  A treating

9   physician's opinion, however, is not necessarily conclusive as to either a physical condition or

10   the ultimate issue of disability, and can be rejected, whether or not that opinion is contradicted.

11   *Magallanes*, 881 F.2d at 751.  If an ALJ rejects the opinion of a treating or examining

12   physician, the ALJ must give clear and convincing reasons for doing so if the opinion is not

13   contradicted by other evidence, and specific and legitimate reasons if it is.  *Reddick v. Chater*,

14   157 F.3d 715, 725 (9th Cir. 1988).  "This can be done by setting out a detailed and thorough

15   summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and

16   making findings."  *Id*. (citing *Magallanes*, 881 F.2d at 751).  The ALJ must do more than

17   merely state his conclusions.  "He must set forth his own interpretations and explain why they,

18   rather than the doctors', are correct."  *Id*. (citing *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th

19   Cir. 1988)).  Such conclusions must at all times be supported by substantial evidence.  *Reddick*,

20   157 F.3d at 725.

21       The opinions of examining physicians are to be given more weight than non-examining

22   physicians.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Like treating physicians, the

23   uncontradicted opinions of examining physicians may not be rejected without clear and

24   convincing evidence.  *Id*.  An ALJ may reject the controverted opinions of an examining

REPORT AND RECOMMENDATION - 7

1    physician only by providing specific and legitimate reasons that are supported by the record.

2    *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

3                    2.    The ALJ Erred in Not Addressing the Medical Opinions of Group Health
                          Physicians.

4

5            Plaintiff sought treatment at Group Health Physicians after her move to Washington

6    State in 2007.  As the Commissioner concedes, the ALJ's decision does not mention the

7    opinions of Group Health Physicians providers but references some of their reports in the

8    written decision.  *See* Dkt. 13 at 4 ("The ALJ . . . discussed these medical exhibits in her

9    decision, but did not discuss the specific physicians by name.").  *See* AR at 478-500, 510-582

10   (the medical records from Group Health Physicians).   The Commissioner contends that any

11   error flowing from the ALJ's failure to mention these opinions is harmless, because none of the

12   physicians opined about Plaintiff's functional abilities — or even if they did provide such an

13   opinion, Plaintiff has not shown that their opinions should have been afforded more weight

14   than the opinions expressly adopted by the ALJ.

15           The Court rejects the Commissioner's arguments for a number of reasons.  First, as

16   pointed out by Plaintiff, the ALJ did not "discuss" the medical exhibits from Group Health

17   Physicians, but only referenced them in a string citation.  *See* AR at 18.  Second, the medical

18   records do contain opinions about Plaintiff's functional abilities, such as increased tenderness

19   on the left side of Plaintiff's cervical spine, and increased pain raising the right shoulder.  *See*

20   AR at 498.  Furthermore, the medical records contain relevant information explaining

21   Plaintiff's reluctance to try anti-depression medications and mental health counseling.  *See* AR

22   at 576, 580-81.  The ALJ found that Plaintiff's lack of depression treatment indicated that her

23   impairments were not as severe or limiting as she had claimed, but did not address the

24   justifications — whether legitimate or not — provided in the record.  Lastly, it is not Plaintiff's

REPORT AND RECOMMENDATION - 8

1    burden to establish that the Group Health Physicians providers' opinions should have been

2    afforded more weight than the opinions credited by the ALJ; it is the ALJ's burden to explain

3    why this significant, probative evidence was rejected.  *See Vincent ex rel. Vincent v. Heckler*,

4    739 F.2d 1393, 1395 (9th Cir. 1984); *see also Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th

5    Cir. 2007) (explaining that an ALJ cannot avoid the obligation to provide specific and

6    legitimate reasons for rejecting a treating physician's opinion "simply by not mentioning the

7    treating physician's opinion and making findings contrary to it").  The Court finds that the

8    ALJ's failure to address the Group Health Physicians records was not harmless, and thus on

9    remand the ALJ shall consider and explicitly address the weight assigned to the Group Health

10   Physicians records.

11         3.      The ALJ Erred in her Evaluation of Dr. Peterson's Opinions.

12         Norman Peterson, M.D., conducted a psychiatric evaluation of Plaintiff on June 25,

13   2008, and at the end of his five-page report, he concluded that

14         The claimant is having ser[i]ous problems with concentration, memory and
           emotional and physiological functioning.  If treated she could reenter the work
15         world.  However, treatment is not present right now.  The claimant is quite
           impaired physically, psychologically and cognitively.  Together these prevent
16         her from reentering the work world at the present time.

17   AR at 450.  The ALJ considered Dr. Peterson's opinions as follows:

18         The claimant underwent a consultative examination with Norman F. Peterson,
           M.D. in June 2008.  Dr. Peterson opined that the claimant has serious problems
19         with concentration, memory, and emotional and physiological functioning.  He
           noted that if treated, she would be capable of re-entering the work world,
20         though she was not receiving treatment at the time of the evaluation.  Dr.
           Peterson also assigned the claimant a global assessment of function (GAF)
21         score of 40, which suggests impairment in reality testing or communication or
           major impairment in several areas, such as work or school, family relations,
22         judgment, thinking, or mood.  The claimant's reported activities of daily living,
           social functioning, and performance on mental status examination, do not
23         support the extensive limitations outlined by Dr. Peterson.  In fact, he even
           noted that the claimant has supportive friends and maintains social interactions
24         with family members, and attends activities with her children.  He also noted

REPORT AND RECOMMENDATION - 9

that she is able to do housework, though limited to an extent by her physical impairments, and her performance on memory and concentration testing suggests no more than moderate limitations.  For these reasons, the undersigned finds that Dr. Peterson's opinion is unsupported by the medical evidence of record, and gives it little weight in determining the claimant's functional abilities and limitations.

AR at 24 (internal citations omitted).  Plaintiff contends that the ALJ overlooked her poor results on concentration and memory testing, as noted by Dr. Peterson.  Plaintiff also contends that her reported daily activities and social functioning are consistent with Dr. Peterson's opinions.  Thus, Plaintiff argues that the ALJ should not have discounted Dr. Peterson's opinions.  Dkt. 12 at 9.  The Commissioner does not specifically address any of the Plaintiff's arguments with respect to Dr. Peterson's opinions, but simply restates the ALJ's reasoning and argues that "[t]he ALJ properly found Dr. Peterson's opinion was unsupported by the medical evidence of record[.]"  Dkt. 13 at 7.

It is true, as Plaintiff highlights, that Plaintiff was unable to remember any of three objects after five minutes, and could not subtract serial sevens from 100.  AR at 448-49.  She could, however, subtract serial threes from twenty-five, and follow a three-step command.  AR at 449.  Dr. Peterson also noted that Plaintiff "has good memory for remote and recent events."  AR at 448.  Thus, the ALJ did not err in finding that Dr. Peterson's memory and concentrating testing "suggests no more than moderate limitations."  AR at 24.

But the Court agrees with Plaintiff that the ALJ's decision mischaracterizes Dr. Peterson's report in other ways.  Contrary to the ALJ's ruling, Dr. Peterson's report does not indicate that Plaintiff has impairments in social functioning.  As noted by the parties, Dr. Peterson recorded that Plaintiff has supportive family and friends, and enjoys playing with her children.  AR at 449.  Dr. Peterson does not indicate that Plaintiff suffers from social

impairments.  Thus, to whatever degree the ALJ found Plaintiff's reported social functioning to be inconsistent with Dr. Peterson's opinions, such a perception is not well-founded.

It is also unclear how Plaintiff's reported daily activities contradict Dr. Peterson's opinions.  Dr. Peterson described Plaintiff as "tearful" when she described her problems with daily functioning, and he also noted that doing housework causes pain.  AR at 448-49.  He also stated that Plaintiff's sister lives next door and helps Plaintiff with her household tasks, and that Plaintiff has to stop and rest while driving due to pain.  AR at 449.

Furthermore, the ALJ's finding that Dr. Peterson's opinions are unsupported by the medical evidence of record lacks specificity, because it is unclear which medical evidence the ALJ had in mind.  Dr. Peterson's opinions appear to be based on his personal observations and examination, with particular focus on Plaintiff's depression and anxiety symptoms, and the ALJ's decision does not refer to any other medical evidence regarding Plaintiff's mental limitations.  Thus, on remand the ALJ shall reevaluate Dr. Peterson's opinions and, if necessary, explicitly indicate which medical evidence contradicts Dr. Peterson's opinions.

    4.    <u>The ALJ Erred in Failing to Provide Specific and Legitimate Reasons to Discount Dr. Hunt's Opinions.</u>

Orthopedic surgeon Dr. Timothy J. Hunt examined Plaintiff multiple times and wrote one 17-page report and one 15-page report, in addition to shorter exam notes.  *See* AR at 362-434.  Dr. Hunt's opinions included detailed work-restriction recommendations, and the ALJ noted that her RFC was less restrictive than Dr. Hunt's recommendations.  *See* AR at 23.  The ALJ found that Dr. Hunt's "extensive restrictions are not entirely supported by objective evidence, as explained throughout this decision.  Therefore, the undersigned has given limited weight to the evaluations and opinions of Dr. Hunt."  *Id.*

1    According to Plaintiff, this finding is not a specific, legitimate reason supported by the

2    record.  The Commissioner argues that the ALJ's decision is sufficiently specific because it

3    indicates that Dr. Hunt's opinions were not entirely supported by objective evidence.  The

4    Court agrees with Plaintiff, because the ALJ's conclusory finding regarding Dr. Hunt's opinion

5    does not explain which evidence is inconsistent with Dr. Hunt's opinions.  The ALJ's decision

6    does not address the objective evidence cited by Dr. Hunt, including an MRI scan of Plaintiff's

7    cervical spine, x-rays of Plaintiff's cervical and lumbar spine and right shoulder, range of

8    motion and muscle strength testing, and multiple physical examinations.  AR at 373.  Dr. West,

9    whom the ALJ credited with "significant consideration" (AR at 23), specifically mentions in

10   his report that he lacks "reports relating to imaging studies for the back or neck," and that his

11   opinions about Plaintiff's functionality may change if imaging studies were available.  AR at

12   443.

13   Without any specificity as to which "objective evidence" contradicted Dr. Hunt's

14   opinion, the Court cannot evaluate whether the ALJ's reason for discounting Dr. Hunt's

15   opinions as "not entirely supported by objective evidence" is legitimate.  Thus, the Court finds

16   that the ALJ erred in not providing a specific, legitimate reason for discounting Dr. Hunt's

17   opinions.  On remand, the ALJ shall reevaluate Dr. Hunt's opinions and, if necessary,

18   explicitly indicate which objective evidence contradicts his opinions.

19        5.    The ALJ Erred in Failing to Include All Limitations Identified by Dr. West in
             the RFC Assessment.

20   Plaintiff was evaluated by Raymond West, M.D., on June 19, 2008.  AR at 438-443.

21   Dr. West assessed Plaintiff's functionality with regard to *inter alia* standing, walking, and

22   sitting:

23        Standing and walking: . . . Regrettably there are [no] reports relating to imaging
          studies for the back or the neck.  Lacking these, I believe the claimant is able to

24

1    stand and to walk for 4-5 hours cumulatively in an eight-hour day.  This opinion
     may require qualification if imaging studies become available.

2

3    Sitting: The claimant is able to sit for 5-6 hours cumulatively in an eight-hour
     day providing she is able to move about from time to time.

4    AR at 443 (emphasis added).

5        The ALJ summarized his opinions as follows:

6        After a thorough physical examination, Dr. West opined that the claimant could
         perform work activities at the light exertional level.  He specifically opinioned

7        that she could stand and walk four to five hours cumulatively in an eight-hour
         workday, sit five to six hours cumulatively in an eight-hour workday, and lift

8        and carry 25 to 30 pounds occasionally and 15 to 20 pounds more frequently.
         He noted that there was little to support her self-imposed limitations of standing

9        20 to 30 minutes and walking two to three blocks.  Dr. West's opinion is
         entirely consistent with his findings on physical examination, and her reported

10       activities such as shopping on her own, carrying 20 pounds of groceries from
         the car to the house, and driving.  Accordingly, the undersigned gives

11       significant consideration to Dr. West's evaluation and opinion in determining
         the claimant's physical abilities and limitations.

12
13   AR at 23 (internal citations omitted).  The ALJ's description of Dr. West's opinion is

14   consistent with her RFC assessment, but omits some of the limitations identified by Dr. West:

15       After careful consideration of the entire record, the undersigned finds that the
         claimant has the residual functional capacity to lift and/or carry up to 20 pounds

16       occasionally and 10 pounds frequently, stand and/or walk up to six hours in an
         eight-hour workday, and sit up to six hours in an eight-hour workday.  The

17       claimant is limited to occasional climbing of ramps, stairs, and ladders,
         stooping, kneeling, crouching, and crawling.  The claimant is able to perform

18       and persist at simple, repetitive tasks, and interact appropriately with
         supervisors, and co-workers, though she would work best in a job without
         constant contact with the general public.

19
20   AR at 21.  The Plaintiff contends that the ALJ erred in failing to include Dr. West's

21   qualification that Plaintiff can sit up to six hours in an eight-hour workday only if she is able to

22   "move about from time to time."  The ALJ also did not explain why she found that Plaintiff

23   can stand or walk up to six hours out of an eight-hour workday, even though Dr. West opined

24   that she could stand or walk for a cumulative 4-5 hours out of an eight-hour workday.  Given

1   that the ALJ afforded "significant consideration" to Dr. West's opinions, and yet did not

2   incorporate all of his limitations in the RFC assessment, the Plaintiff argues that the RFC

3   assessment is erroneous.  The Commissioner does not address the discrepancies between Dr.

4   West's opinions and the ALJ's RFC assessment in the response brief.

5          Because the ALJ's decision both affords "significant consideration" to Dr. West's

6   opinions and yet fails to explain why some of his limitations were apparently rejected, the

7   Court finds that the ALJ erred in not providing specific, legitimate reasons for rejecting Dr.

8   West's opinions.  On remand, the ALJ shall reevaluate Dr. West's opinions and, if necessary,

9   explain which of his opinions are rejected and provide specific, legitimate reasons for rejecting

10  those opinions.

11         6.     The ALJ's Errors in Evaluating the Medical Evidence Require Reassessment of
                  Plaintiff's RFC on Remand.

12         Because the Court finds that the ALJ erred in evaluating the medical evidence, as

13  explained in this section, on remand the ALJ shall also reevaluate Plaintiff's RFC in light of

14  new findings regarding the medical record.

15  B.     The ALJ Shall Reevalute Plaintiff's Credibility After Reevaluating the Medical
          Evidence.

16

17         The ALJ found that Plaintiff's symptom testimony was not wholly credible:

18         The claimant has not generally received the type of medical treatment one
           would expect of a disabled individual.  Although she testified to having some
19         difficulty receiving treatment due to challenges associated with transferring her
           worker's compensation claim from California to Washington, when she has
20         received treatment [it] has primarily been conservative in nature, receiving pain
           medications and attending physical therapy.  There is no evidence that surgery
21         for her back or neck condition is indicated.  Furthermore, the claimant testified
           that she only started attending counseling within the few months prior to the
22         hearing, and she only tried medications on one occasion for a short time period.
           In fact, the record indicates that she was on Prozac only once, in 2002, when
23         experiencing postpartum depression.  The undersigned finds that the claimant's
           lack of treatment and the conservative nature of treatments received suggest that

24

REPORT AND RECOMMENDATION - 14

the claimant's impairments are not as severe or limiting as she has alleged in connection with this application.

In addition, the claimant's activities of daily living, not limited to the extent that they are inconsistent with the residual functional capacity outlined above. For example, she lives in an apartment with her two young children and she reported that she is able to do some housework. She is also capable of caring for her children, which can be quite demanding both physically and emotionally, without any particular assistance. The claimant's engaging in such activities erodes the credibility of her allegations of disability.

AR at 22 (internal citations omitted).

     1.   <u>Standards for Evaluating a Claimant's Credibility.</u>

Credibility determinations are within the province of the ALJ's responsibilities, and will not be disturbed, unless they are not supported by substantial evidence. A determination of whether to accept a claimant's subjective symptom testimony requires a two-step analysis. 20 C.F.R. §§ 404.1529, 416.929; *Smolen*, 80 F.3d at 1281; Social Security Ruling ("SSR") 96-7p. First, the ALJ must determine whether there is a medically determinable impairment that reasonably could be expected to cause the claimant's symptoms. 20 C.F.R. §§ 404.1529(b), 416.929(b); *Smolen*, 80 F.3d at 1281-82; SSR 96-7p. Once a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony as to the severity of symptoms solely because they are unsupported by objective medical evidence. *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991) (en banc); *Reddick*, 157 F.3d at 722. Absent affirmative evidence showing that the claimant is malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722.

When evaluating a claimant's credibility, the ALJ must specifically identify what testimony is not credible and what evidence undermines the claimant's complaints; general findings are insufficient. *Smolen*, 80 F.3d at 1284; *Reddick*, 157 F.3d at 722. The ALJ may consider "ordinary techniques of credibility evaluation" including a reputation for truthfulness,

1    inconsistencies in testimony or between testimony and conduct, daily activities, work record,

2    and testimony from physicians and third parties concerning the nature, severity, and effect of

3    the symptoms of which he complains. *Smolen*, 80 F.3d at 1284; *see also Light v. Social Sec.*

4    *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

5            2.      The ALJ Shall Reconsider Plaintiff's Credibility.

6            Although the ALJ did provide some specific reasons for discounting Plaintiff's

7    credibility, including a lack of consistency with the medical record, the ALJ did not properly

8    evaluate the medical evidence, as explained *supra*, Part VII.A.  Thus, the Court directs the ALJ

9    to reassess Plaintiff's credibility, particularly in light of the evidence from the Group Health

10   Physicians providers, Dr. Hunt, and Dr. Peterson regarding Plaintiff's medical limitations and

11   their effect on Plaintiff's daily activities.

12   C.      The ALJ Erred in Evaluating Some of the Lay Evidence.

13           The Plaintiff submitted statements from three lay witnesses: (1) Candice Blough, the

14   Plaintiff's friend; (2) Christopher B. Fuller, the Plaintiff's friend and former co-worker; and (3)

15   Jessica Langston, the Plaintiff's sister.  *See* AR at 252-259, 304-317.  The ALJ considered

16   those statements, but assigned "limited probative value" to them:

17           In considering evidence from "non-medical sources" who have not seen the
             individual in a professional capacity in connection with their impairments, such
18           as spouses, parents, friends, and neighbors, it would be appropriate to consider
             such factors as the nature and extent of the relationship, whether the evidence is
19           consistent with other evidence, and any other factors that tend to support or
             refute the evidence.  As close friends and family members of the claimant, it is
20           in the witnesses' best interest to support the claimant's allegations.  However,
             the medical evidence of record does not support the degree of limitations
21           outlined in the witness's statements.  In addition, it is apparent that the
             statements of Mr. Fuller, Ms. Blough, and Ms. Langston were based largely on
22           the self-report of the claimant to her friends and sister.  Therefore, because these
             statements are not consistent with the medical evidence of record, the
23           undersigned has considered them, but finds that they have little probative value.

24   AR at 24.

REPORT AND RECOMMENDATION - 16

1        1.        Standards for Evaluating Lay Witness Evidence.

2              In order to determine whether a claimant is disabled, an ALJ may consider lay-witness

3    sources, such as testimony by nurse practitioners, physicians' assistants, and counselors, as

4    well as "non-medical" sources, such as spouses, parents, siblings, and friends.  *See* 20 C.F.R. §

5    404.1513(d).  Such testimony regarding a claimant's symptoms or how an impairment affects

6    his ability to work is competent evidence, and cannot be disregarded without comment.

7    *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).  If an ALJ chooses to discount

8    testimony of a lay witness, he must provide "reasons that are germane to each witness," and

9    may not simply categorically discredit the testimony.  *Dodrill,* 12 F.3d at 919.

10        2.        The ALJ Erred in Rejecting Ms. Langston's and Ms. Blough's Evidence
                    Without Germane Reasons For Doing So.

11              The Court finds that the ALJ properly discounted the value of the statements provided

12   by Mr. Fuller, because his report is not particularly detailed nor based on his own observations.

13   But the reports of Ms. Langston and Ms. Blough indicate that they provide regular, ongoing

14   assistance to Plaintiff in maintaining her household and caring for her children.  AR at 305-07,

15   313-15.  These reports contradict the ALJ's finding that Plaintiff's daily activities include

16   housework and caring for her children without assistance.   AR at 22.  The ALJ did not provide

17   germane reasons when discounting the statements of Ms. Langston and Ms. Blough,

18   particularly in light of their value in describing Plaintiff's daily activities.  On remand, the ALJ

19   shall reconsider these two statements and explicitly address the weight assigned to their

20   descriptions of Plaintiff's daily activities.

21   D.     The ALJ Erred in Assessing Plaintiff's RFC.

22              For the reasons explained *supra*, Part VII.A, the Court finds that the ALJ erred in

23   evaluating the medical evidence and therefore must reassess the Plaintiff's RFC.  Plaintiff

24

REPORT AND RECOMMENDATION - 17

1    makes one additional argument regarding the ALJ's RFC assessment: that the ALJ erred by

2    failing to include the limitations identified by state agency psychologist Thomas Clifford,

3    Ph.D., who found Plaintiff to be moderately limited in her ability to (1) maintain attention and

4    concentration for extended periods of time, (2) complete a normal workday and workweek

5    without interruptions from psychologically based symptoms, and (3) perform at a consistent

6    pace without an unreasonable number and length of rest periods.  *See* Dkt. 12 at 22 (citing AR

7    at 466-67).  Those moderate limitations were not included in the ALJ's RFC assessment.  AR

8    at 21.

9            Though the Commissioner emphasizes that Dr. Clifford found that Plaintiff had no

10   significant limitations, the ALJ did include Dr. Clifford's "moderate" limitations in a

11   hypothetical to the vocational expert.  *See* AR at 84.  The ALJ did not, however, explain why

12   those limitations were not included in the written RFC assessment, particularly in light of the

13   ALJ's affording "some weight" to Dr. Clifford's conclusions.  *See* AR at 23.  Because the ALJ

14   "must consider limitations and restrictions imposed by all of an individual's impairments, even

15   those that are not 'severe,'" and the ALJ failed to explain why the moderate impairments

16   identified by Dr. Clifford were not credited, the Court finds that the ALJ erred.  *See* SSR 96-

17   8p.  On remand, the ALJ shall reconsider Dr. Clifford's opinions and reassess Plaintiff's RFC

18   in light of the limitations identified by Dr. Clifford.

19           Given that the Court has found that the ALJ must reassess Plaintiff's RFC on remand,

20   the ALJ shall also reconsider the step five finding in light of the new RFC determination.

21

22

23

24

REPORT AND RECOMMENDATION - 18

1

VIII.   CONCLUSION

2      For the foregoing reasons, the Court recommends that this case be REVERSED and

3 REMANDED to the Commissioner for further proceedings not inconsistent with the Court's

4 instructions.  A proposed order accompanies this Report and Recommendation.

5      DATED this 11th day of July, 2012.

6

7                                        _____

8                                        JAMES P. DONOHUE
                                         United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 19